## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. STELMACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13CV2540 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying Kimberly A. Stelmach's ("Stelmach") application for

disability insurance benefits under Tile II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*,

and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

§§ 1381, *et seq.*[1]

### I.    Background

On October 2, 2007, Stelmach filed an application for supplemental security income

("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, alleging disability

since September 1, 2005. (Tr. 265-267) The Social Security Administration denied her claim on

December 6, 2007. (Tr. 172-175) She filed a timely request for a hearing before an

administrative law judge (ALJ) on January 7, 2008. (Tr. 179) Following a hearing on April 2,

2009, the ALJ issued a written decision on April 29, 2009 upholding the denial of benefits. (Tr.

152-162) Stelmach then requested review of the ALJ's decision by the Appeals Council on May

---

[1] The record before the Court contains an application for SSI only, which the ALJ has addressed in his decision.

6, 2009.[2] (Tr. 210) On January 27, 2011, the Appeals Council remanded the case for further evaluation. (Tr. 163-168) Stelmach appeared and testified at a second hearing held on July 12, 2011. (Tr. 44-122) Following the hearing, the ALJ issued a written decision on August 8, 2011 finding Stelmach was not disabled. (Tr. 7-43) Stelmach again requested review of the ALJ's decision by the Appeals Council (Tr. 5), which request was denied on November 4, 2013. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Stelmach filed this appeal on December 20, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 9) Stelmach filed a brief in support of her complaint (Doc. No. 15) and the Commissioner filed a brief in support of the answer. (Doc. No. 20) Stelmach did not file a reply.

## II.    Decision of the ALJ

The ALJ determined that Stelmach had not engaged in substantial gainful activity since October 2, 2007, the application date. (Tr. 12-14) The ALJ found Stelmach had the severe impairments of degenerative disk disease of the cervical and lumbar spine, with spondylosis, hepatitis C, post-traumatic arthritis of the left ankle, major depressive disorder, alternately diagnosed as schizoaffective disorder, and borderline personality disorder (Tr. 14-18), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-22)

After considering the entire record, the ALJ determined Stelmach had the residual functional capacity ("RFC") to perform light work, with the following additional limitations: she

---

[2] While her claim was pending before the Appeals Council, Stelmach filed a subsequent application for SSI on September 21, 2009, also alleging disability since September 1, 2005. (Tr. 411-414) Per the instructions of the Appeals Council, this claim was associated with the prior claim. (Tr. 10)

can occasionally climb ramps and stairs; cannot climb ladders, ropes or scaffolds; is limited to frequent pushing and pulling with the bilateral arms and left lower extremity; cannot lift overhead; is limited to frequent reaching overhead; must avoid concentrated exposure to extreme cold and vibrations; can understand, remember, and carry out at least simple instructions and non-detailed tasks; can maintain concentration and attention for two-hour segments over an eight-hour period; can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is causal and infrequent; can adapt to routine, simple work changes; and can perform work at a normal pace without productions quotas. (Tr. 22-34) The ALJ found Stelmach capable of performing past relevant work as a housekeeper. (Tr. 34-35) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 36)

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on July 12, 2011. Stelmach testified and was represented by counsel. Dr. Stanley W. Golon, M.D., psychological expert, and Dr. Jeffrey F. Magrowski, Ph.D., vocational expert, also testified at the hearing.

#### 1. Stelmach's testimony

At the time of the hearing, Stelmach was 51 years old and living with her niece and her niece's four children. (Tr. 49) She completed the 10th grade in school. (Tr. 53) She is able to read and do simple arithmetic and make change. (Tr. 55) Stelmach has held a number of part-time jobs during the period of disability, including telemarketer and in-store demonstrator at grocery stores. (Tr. 57-58) Over the past 15 years, Stelmach has worked as a factory assembly worker, a

3

certified nurse's aide, a hotel housekeeper, a machine operator, and a waitress/bartender. (Tr. 60-64)

Stelmach testified to being physically and emotionally abused as a child. (Tr. 71, 95) She has a history of substance abuse with marijuana, cocaine, hallucinogenics, and alcohol (Tr. 72-75, 80-82) and states that she has been "clean" for five years. (Tr. 56) It was her testimony that she is unable to work due to chronic fatigue, depression, and pain in her left ankle. (Tr. 68-70)

Stelmach is able to cook meals, do laundry and other household chores. (Tr. 85-86) She has a drivers license but her niece usually drives her. (Tr. 82-83) She uses public transportation regularly and can shop for groceries. (Tr. 87) She can walk a block or two before needing to rest. She tries to walk because it helps her. (Tr. 87) She can stand for about 45 minutes and sit for 15 to 20 minutes. (Tr. 87-88) She can lift approximately 10 pounds. (Tr. 88)

Upon questioning by her counsel, Stelmach testified she needed breaks at work because she has to get up and move around for her pain. (Tr. 93-94) Her doctor told her to elevate her legs to take some of the pressure off her knees. (Tr. 94) She testified to side effects from the medications she takes, including fatigue, memory loss, crying spells, and headaches. (Tr. 95-97, 99) Even if she had a job where she sat for the better part of the day, Stelmach did not think she could emotionally deal with the pressure or physically stay awake because of her side effects and pain. (Tr. 97-99)

## 2. Testimony of psychological expert

Stanley W. Golon, M.D., board certified psychologist, testified that in his opinion, Stelmach suffers from a major depressive disorder and at times a schizoaffective disorder and a dysthymic disorder. All three conditions are considered a borderline personality disorder. Stelmach also has a long history of poly-substance dependence, including amphetamines,

4

cocaine, alcohol and possibly opiates. (Tr. 104) In his opinion, Stelmach has mild limitations in activities of daily living and moderate limitations in social functioning and concentration, persistence and pace with one or two episodes of decompensation. (Tr. 105) Dr. Golon essentially agreed with the Mental RFC Assessment of Stelmach conducted by the state agency psychological consultant, Dr. Kyle DeVore, Ph.D. (Tr.1097-99), but believes she can do low stress, simple, repetitive, work-related activities with limited contact with others. (Tr. 105-106) He tried to exclude her continued sporadic substance abuse from his opinion. (Id.)

Upon questioning by Stelmach's counsel, Dr. Golon acknowledged that Stelmach has a borderline personality disorder and that the older a person is, the less likely they are to benefit from treatment in the form of mood stabilizers and anti-depressant and anti-psychotic medications. (Tr. 108) He agreed that forgetfulness is a side effect to Topamax, which is on Stelmach's medication list from February/March 2011. (Tr. 109) Side effects from Oxycodone include a clouding of memory and sedation. (Tr. 110-11) He believed that Stelmach would be off task for 15 to 20 percent of work time, i.e., 90 minutes out of an eight hour day, and would miss one or two days of work per month due to psychological factors. (Tr. 110) Any substance abuse would exacerbate these symptoms and interfere with her medications. (Id.)

## 3. Testimony of vocational expert

With respect to Stelmach's vocational history, vocational expert Jeffrey Magrowski, Ph.D., testified that Stelmach did some work as a hotel housekeeper, which is unskilled work done at a light exertional level. (Tr. 116) She also worked as a machine operator, which can be done at a light exertional level in the national economy. These jobs are typically semi-skilled with a specific vocational preparation (SVP) of 3. (Id.) Stelmach has worked as a telemarketer,

sedentary, SVP of 3, semi-skilled; waitress, light, SVP of 3, semi-skilled; and bartender, light, SVP of 3, semi-skilled. (Id.)

For the first hypothetical, the ALJ asked Mr. Magrowski to assume an individual with Stelmach's education, training and work experience who can perform light work and climb stairs and ramps occasionally but never climb ropes, ladders, scaffolds. The individual is limited to only frequent pushing and pulling with the arms and left leg, no overhead lifting and only frequent overhead reaching, and must avoid concentrated exposure to extreme cold and vibrations. This hypothetical individual would be able to understand, remember and carry out simple instructions, perform non-detailed tasks, demonstrate adequate judgment to make simple work-related decisions, respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent, adapt to routine, simple work changes, and perform repetitive work regarding step, procedures, sequence, and pace. (Tr. 117-18)

Based on this hypothetical, Mr. Magrowski testified that such an individual would be able to perform past work as a housekeeper, Dictionary of Occupational Titles (DOT) number 323.687-014, light and unskilled, with approximately 2,000 such jobs in the state of Missouri and over 200,000 in the national economy. (Id.) Mr. Magrowski further testified that such an individual could also do some laundry work, DOT number 302.685-010, light and unskilled, with approximately 1,000 jobs in the state of Missouri and over 50,000 in the national economy. (Tr. 118)

The second hypothetical asked Mr. Magrowski to assume the limitations of the first hypothetical with the following changes to the mental limitations: the individual can understand, remember, carry out at least simple instructions, perform non-detailed tasks, maintain concentration and attention for two hour segments over an eight hour period, respond

6

appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and infrequent, adapt to routine, simple work changes, and perform work at a normal pace without production quotas. (Tr. 118-19) In his opinion, there would be no significant impact. (Tr. 119)

For the last hypothetical, the ALJ asked Mr. Magrowski to assume the limitations of the second hypothetical except that the individual would have up to two absences per month because of poly-substance abuse as well as two additional breaks beyond the normal two breaks and a lunch break. (Tr. 119) In his opinion, such an individual would be unable to maintain a job. (Id.)

Upon questioning by Stelmach's counsel, Mr. Magrowksi testified there would be no full-time jobs available for an individual of Stelmach's age, education and work history who takes a nap one to two hours each day or who would be off task 15 to 20 percent of an eight hour work day. (Tr. 120) Likewise, there would be no jobs for such an individual who needs to elevate the legs for two to three hours during an eight hour work day. (Id.) Special accommodation would be required for an individual who misses more than one day of work a month. (Id.)

**B.     Medical Records**

The ALJ summarized Stelmach's medical records at Tr. 14-18. Relevant medical records are discussed as part of the analysis.

**IV.     Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment

7

must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

8

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495

9

F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Stelmach raises two issues. First, she alleges the ALJ failed to properly consider the opinion evidence from the treating sources when determining her RFC. (Doc. No. 15 at 14-21) Second, Stelmach argues the ALJ failed to determine whether her pain had a psychogenic overlay. (Id. at 21-22)

## A. Opinion evidence

Stelmach argues the ALJ gave significant weight to the opinions of the three non-examining medical consultants, Dr. Stanley Golon, M.D., Dr. Despine Coulis, M.D., and Dr. Kyle DeVore, Ph.D., and little weight to the opinions of all her treating sources. (Doc. No. 15 at 15) In response, the Commissioner asserts that because the ALJ articulated reasons for his

10

determination that were supported by the record evidence, his evaluation of the medical opinion evidence should be affirmed. (Doc. No. 20 at 5)

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. Cross v. Colvin, 2014 WL 320161, at \*9 (E.D.Mo. Jan. 29, 2014) (citing Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir.2012)). See also 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Cross, 2014 WL 320161 at \*9. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir.2010) (alteration in original) (internal quotation omitted). See also Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005); Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir.2010).

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir.2003) (citing Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir.1999)). However, "[w]hen faced with a conclusory opinion by a treating physician, the Commissioner need only come forth with 'some medical evidence' that the claimant can

11

work. Residual functional capacity assessments by non-treating physicians can constitute the requisite substantial evidence." Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir.1995) (citation omitted); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir.2002) (affirming ALJ's decision where ALJ "did not rely solely on the opinion of the consulting physician, but also conducted an independent review of the medical evidence."); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995) ("Although it is true that the opinion of a reviewing physician alone does not constitute substantial evidence, the ALJ did not rely solely on the reviewing physicians in this case. The ALJ also conducted an independent analysis of the medical evidence."). The record before the Court clearly establishes that the ALJ conducted an independent analysis of the medical evidence before him.

## Dr. Golon

At the hearing, Dr. Golon opined, based on his review of the medical evidence, that Stelmach was capable of performing simple, low-stress work in an environment requiring limited contact with others. (Tr. 105) The ALJ gave significant weight to this opinion because it was consistent with the medical evidence of record, discussed herein. (Tr. 28-29) The ALJ gave little weight to Dr. Golon's opinions regarding Stelmach's ability to sustain concentration and pace and her work absences because they were inconsistent with the evidence. (Tr. 28) Specifically, Dr. Golon opined that Stelmach would be unable to sustain adequate concentration and pace for 1-1 ½ hours in a workday and would miss 1-2 days of work per month due to psychiatric symptoms. (Tr. 109-110) Yet as noted by the ALJ, Stelmach was able to sustain sufficient concentration and pace to meet the demands of her semi-skilled work as a telemarketer for more than two years during the alleged period of disability. (Tr. 28) Stelmach argues the ALJ failed to consider the accommodations that allowed her to maintain this job, namely "close monitoring

12

and supervision" and frequent breaks without reprimand. (Doc. No. 15 at 16) However, this is inconsistent with her own reports that she was able to comply with workplace rules despite her concentration problems. (Tr. 28, 313, 314-347, 348-351, 1317, 1321, 1325, 1327, 1342, 1362) In addition, Stelmach reported to her treating psychiatrist in January 2010 that she was attending work as scheduled; her medical and vocational records do not show she missed or left work because of her mental impairments. (Tr. 313-351 1315-1365, 540-559, 740-761, 816-820, 997-1045, 1254-1257)

### Dr. Coulis

In March 2010, Dr. Despine Coulis, M.D., the state agency medical consultant, reviewed the available medical evidence of record and completed a Physical RFC Assessment of Stelmach. (Tr. 1080-1085) Dr. Coulis opined that Stelmach retained the RFC to meet the exertional demands of light work. She further opined that Stelmach was limited to only occasional climbing of ramps and stairs. The ALJ gave significant weight to Dr. Coulis' opinion because it was consistent with the objective medical evidence. (Tr. 23)

With respect to Stelmach's left ankle, in June 2009, she presented to an orthopedist with complaints of pain in her left ankle. Stelmach reported that she had sustained a shatter fracture to her ankle in 1997 and had surgery to repair the fracture at that time. (Tr. 494-536, 852-925) X-rays revealed a broken distal tibial screw from a previous surgery. She had surgery to remove the screw on August 22, 2009. (Tr. 953-959) Four weeks later, x-rays showed the fracture was still healed, with no evidence of hardware failure and no interval change. Her doctor released her to return to all activities, including aerobic activity, and did not advise her to abstain from any activities. (Tr. 953-959) In December 2009, x-rays showed internal stabilization and healed fracture. She was prescribed a brace to relieve pain. (Tr. 1127-1133) In October 2010, she reported her ankle pain was intermittent and overall controlled. (Id.) At a follow up appointment

13

in January 2011, Stelmach reported some soreness in the ankle, but was able to bear weight on it and perform her work duties. (Tr. 1303-1309)

As for Stelmach's neck and back impairments, when she first sought treatment in October 2009, she demonstrated normal range of motion of the cervical and lumbar spine, normal gait, and only mildly tender lumbar paraspinal musculature. (Tr. 960-996) She was diagnosed with degenerative disc disease, which her treating physician described as "not serious." (Id.) She was referred to a pain management specialist in December 2009. (Tr. 960-996; 1054-1079) Stelmach had five visits to her pain management physician in 2010 and one visit in 2011; her examinations were mostly unremarkable. (Tr. 1134-1194, 1258-1283) Despite her claims of numbness and tingling in her upper extremities and back pain radiating to the lower extremities, the ALJ noted Stelmach has always had full range of motion of the cervical and lumbar spine and bilateral upper extremities and exhibited normal gait at most appointments. (Tr. 25) Moreover, she has never been prescribed any assistive device for her neck or back or been advised to refrain from physical activity such as lifting or prolonged walking. (Id.)

Lastly, with regard to Stelmach's hepatitis C, diagnosed in February 2007 (Tr. 453-460), the record shows she completed 48 weeks of treatment in May 2008 and her liver function tests have consistently been normal since that time. (Tr. 603-718, 926-952) In sum, this objective medical evidence supports the ALJ's finding that Stelmach retains the RFC to perform light work.

Stelmach argues that Dr. Coulis' opinion predated much of the medical evidence of record. (Doc. No. 15 at 18-19) The ALJ clearly took this into account, noting that while Dr. Coulis did not restrict Stelmach's ability to push and pull with the left lower extremity, the medical evidence subsequently received indicated that her left ankle did impose some limitation

on this activity. The ALJ factored this in to the RFC determination. In any event, the ALJ found Dr. Coulis' opinion consistent with the objective medical evidence discussed above and based on a thorough review of the medical records. (Tr. 23) Stelmach also points out that Dr. Coulis is a pediatrician (Doc. No. 15 at 19); however, the fact that Dr. Coulis specializes in pediatrics does not detract from her capacity to assess Stelmach's RFC. See Boyd v. Barnhart, 258 F.Supp.2d 1013, 1020 (E.D.Mo. 2003).

### Dr. DeVore

Dr. Kyle DeVore, Ph.D., the state agency psychological consultant, completed a Mental RFC Assessment of Stelmach in March 2010, wherein he opined that she retained the ability to perform simple work with limited social interaction. (Tr. 1097-1099) The ALJ noted that Dr. DeVore's opinion from December 2007 reflected similar limitations. (Tr. 560-573) The ALJ found Dr. DeVore's opinions consistent with the medical evidence of record and supported by the opinion and testimony of Dr. Golon and thus gave them significant weight. (Tr. 29) The ALJ acknowledged that Dr. DeVore's RFC assessment did not reflect all of the available medical evidence, specifically Stelmach's psychiatric treatment records from 2010 and 2011 that were received after he rendered his opinion. (Tr. 1254-1257; 1315-1365) However, the ALJ found the subsequently received medical records did not reflect any significant change in Stelmach's mental impairments, symptoms or treatment. (Tr. 29) In fact, a review of those records show Stelmach consistently reported doing well overall, with good response to medication and no side effects. (Tr. 1254-1257; 1315-1365) Thus, Dr. DeVore's opinion is representative of Stelmach's functioning throughout the alleged period of disability.

### Dr. Chik

In May 2010, Dr. Kimberly Chik, M.D., completed a Mental RFC Assessment of Stelmach wherein she opined that Stelmach was unable to meet competitive standards for

maintaining attention and concentration for two-hour segments, working in coordination with or proximity to others without being unduly distracted by them, and completing a normal workday or week without interruptions from psychological symptoms. (Tr. 1100-1105) She further opined that Stelmach had seriously limited abilities to make simple work-related decisions, respond appropriately to changes in a routine work setting, and deal with normal work stress. (Id.)

The ALJ acknowledged Dr. Chik's treating relationship with Stelmach, but gave her opinions little weight because they were inconsistent with her treatment notes and other evidence of record. (Tr. 29) Specifically, Dr. Chik's assessment of Stelmach from July 2009 reflected normal concentration. (Tr. 997-1053) Her treatment notes from 2009 and 2010 indicated only infrequent complaints of poor concentration from Stelmach. (Tr. 1254-1257, 1315-1365) Dr. Chik repeatedly gave Stelmach Global Assessment of Functioning (GAF) scores ranging from 50 to 65,[3] which is inconsistent with the extreme limitations set out in her Mental RFC Assessment. (Tr. 997-1053, 1100-1104, 1254-1257, 1315-1365) Dr. Chik did not prescribed any changes to Stelmach's psychotropic medications. (Tr. 997-1053, 1254-1257, 1315-1365) In addition, treatment notes from Dr. Chik and Stelmach's other mental health providers repeatedly characterized Stelmach's mood and psychiatric conditions as stable in 2010. (Tr. 1315-1365)

**Dr. Kargas**

In May 2010, Dr. David E. Kargas, D.O., Stelmach's treating orthopedist, completed a Physical RFC Assessment of Stelmach. He opined that Stelmach's left ankle impairment

---

[3] A GAF of 41 through 50 is characterized by serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000) (DSM-IV-TR).

rendered her unable to walk any city blocks without rest or severe pain. (Tr. 1105-1109) Dr. Kargas opined that Stelmach could sit at least 6 hours in an eight-hour workday and stand/walk less than 2 hours in an eight-hour workday. (Tr. 1106) He further opined that Stelmach was required to elevate her legs with prolonged sitting, that she can only rarely twist and stoop, or lift even less than ten pounds. (Tr. 1107) It was also Dr. Kargas' opinion that Stelmach's left ankle symptoms would require her to take eight unscheduled breaks per day, each lasting 20 minutes and would cause her to miss more than four days of work per month. (Tr. 1108)

The ALJ found Dr. Kargas' opinions unsupported by his own treatment notes and the other medical evidence of record and gave them little weight in determining Stelmach's RFC. (Tr. 26) In particular, in September 2009, one month after Stelmach's ankle surgery, Dr. Kargas released her to return to all activities, including aerobic activity. He never advised her to abstain from any activities, nor did he instruct her to elevate her leg when sitting for prolonged periods. In addition, his treatment notes consistently showed Stelmach reporting well-controlled or minimal ankle pain with no complaints of difficulty standing, walking, sitting or lifting because of her ankle. (Tr. 953-959, 1127-1133, 1303, 1309)

The ALJ further found Dr. Kargas' opinion to be internally inconsistent. He opined that Stelmach can sit for 45 minutes at a time and also for more than two hours at a time. (Tr. 1105-1109) He indicated that Stelmach does not require a job that permits shifting positions at will, but previously opined that she must alternate between sitting and standing. (Id.) "A treating physician's opinion is not afforded controlling weight when the opinion is internally inconsistent, or when it is inconsistent with, or unsupported by, the physician's own treatment notes." Miller v. Colvin, 2014 WL 2159004, at *3 (W.D.Mo. May 23, 2014) (citing Myers v. Colvin, 721 F.3d 521, 525 (8th Cir. 2013); Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir.2009).

17

### Dr. Barnett

Dr. Darel D. Barnett, M.D., one of Stelmach's treating pain management physicians, completed a RFC questionnaire in March 2011. He opined that Stelmach could sit or stand between 1 to 2 hours continuously, sit for 4 hours total in an 8-hour workday, and stand for 20 to 30 minutes continuously (Tr. 1311). He also indicated that every 90 minutes she needed to spend 2 to 3 minutes walking to relieve pain (Tr. 1312). Dr. Barnett reported that Stelmach needed to take two or three unscheduled breaks lasting for five minutes each over the course of an eight-hour workday (Tr. 1312). He further opined that she could frequently lift less than 10 pounds, and rarely lift up to 20 pounds (Tr. 1312). She could occasionally turn her head, twist, and stoop, but only rarely look up or down, crouch, and climb ladders or stairs (Tr. 1313). She also had problems reaching above her head and would be absent from work one day a month due to her impairments (Tr. 1313).

The ALJ gave little weight to Dr. Barnett's opinion, finding his severe restrictions inconsistent with the objective medical evidence of record, including his own findings on examination. (Tr. 26) Stelmach consistently exhibited normal range of motion of the cervical and lumbar spine, as well as normal range of motion of the bilateral upper extremities. (Tr. 960-966, 1054-1079, 1134-1194, 1258-1283) An MRI of her cervical spine conducted in February 2010 showed only mild central canal stenosis and mild neural foraminal narrowing. (Tr. 1116-1117) In particular, the ALJ found it significant that neither Dr. Barnett nor any of Stelmach's other pain management physicians ever advised her to abstain from any activities, such as lifting, prolonged walking or standing. (Tr. 27) It appeared to the ALJ that Dr. Barnett's opinion was derived from Stelmach's subjective complaints. An ALJ may give less weight to a doctor's

opinion that is based on a plaintiff's self-reported complaints, particularly when the plaintiff is not entirely credible. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir.2007).

In determining whether the ALJ properly considered the medical opinion evidence, the Court must review the ALJ's discussion of the opinion evidence and, "[g]enerally, ... not decide whether a source's opinion is well founded, but whether the ALJ provided sufficient reasons for rejecting the opinion of a treating source." Brown v. Colvin, 2014 WL 2894937, at *5 (E.D.Mo. June 26, 2014) (quoting May v. Astrue, 2010 WL 3257848, at *9 (W.D.Mo. Aug. 16, 2010)). In light of the record evidence in this case, the reasons articulated by the ALJ are valid reasons for discounting the opinions of the treating physicians. See, e.g., Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir.2003) (holding the ALJ's decision to discount treating physicians' opinions was proper when the treating physicians' opinions tended to conflict with the opinion of a specialist); Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir.2012) (holding the ALJ did not err in giving minimal weight to the report of a treating physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir.2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment ... nor were they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted"); Perkins v. Astrue, 648 F.3d 892, 898–99 (8th Cir.2011) (finding the ALJ properly discounted a Medical Source Statement in part because the claimant had received only conservative treatments).

**B. Subjective complaints of pain**

19

Stelmach argues the ALJ failed to consider her subjective complaints of pain, and specifically whether her pain was psychological in origin. (Doc. No. 15 at 21) The Commissioner responds first, that Stelmach cites no medical evidence that she was ever diagnosed with a somatoform disorder[4] and second, that the ALJ properly determined her subjective complaints of disabling pain and other subjective symptoms were not credible. (Doc. No. 20 at 12-13)

"It is well-settled 'that pain can cause disability within the meaning of the Social Security Act.' " Johnson v. Secretary of Health & Human Servs., 872 F.2d 810, 812 (8th Cir.1989) (quoting Northcutt v. Califano, 581 F.2d 164, 166 (8th Cir.1978)). But because evidence of pain is necessarily subjective in nature, its evaluation is based in part on a claimant's credibility. Thus, the ALJ must make that initial determination. Id. at 812. An ALJ may discredit subjective complaints of pain only if they are inconsistent with the evidence on the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). If an ALJ rejects a claimant's testimony regarding pain, he must make an express credibility determination detailing his reasons for discrediting the testimony. Prince v. Bowen, 894 F.2d 283, 286 (8th Cir.1990).

The ALJ must give full consideration to all evidence relating to the claimant's subjective complaints of pain, including the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are

_____

[4] A somatoform disorder is a psychiatric disorder which causes the sufferer to have a distorted perception of physical ailments. Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995).

inconsistencies in the record as a whole. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). The Court will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain, even in cases involving psychogenic symptoms resembling those of physical disease. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993); Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995)).

Here, the ALJ found Stelmach's subjective complaints not credible based on numerous inconsistent statements she made regarding her symptoms and limitations. (Tr. 30-34) For instance, she presented at the hearing with a neck brace and testified that Dr. Karges had prescribed it; however, his treatment notes do not evidence such a prescription. (Tr. 30-31, 90-91, 1131) She alleged difficulty hearing and using her hands, which allegations were not supported by the medical evidence record. (Tr. 31, 371, 431) She reported difficulty walking due to her ankle pain, but upon examination, her gait was observed as normal. (Tr. 31, 70, 595, 1009, 1147, 1156, 1176, 1184, 1247, 1255, 1266, 1326, 1333, 1336) In addition, the medical and other evidence of record did not support her allegations regarding the side effects of her medications. (Tr. 31)

The ALJ also found that Stelmach denied drug and alcohol use at times when the results of testing came back positive (Tr. 32-33, 932, 944). See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) ("[T]he ALJ found [claimant] unreliable because his testimony at the administrative hearing regarding his consumption of alcohol conflicted with medical documentation. This was a sufficient reason for discrediting [claimant], and we defer to the ALJ's judgment on this issue.").

Further, Stelmach's activities of daily living were inconsistent with her allegations of pain and functional limitations. (Tr. 33) Her function reports, medical records and testimony all show she is able to cook, clean and grocery shop. She babysits her niece's children. She uses public transportation to get around and reported no difficulty doing so. She reports exercising and walking frequently and engaging in hobbies such as reading, gardening and crafting. See, e.g., Halverson v. Astrue, 600 F.3d 922, 932–33 (8th Cir.2010) (holding that the ALJ properly considered daily activities in conjunction with other inconsistencies in the record in assessing the credibility of Plaintiff's complaints); Wagner v. Astrue, 499 F.3d 842, 852–53 (8th Cir.2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible). Stelmach's ability to work part-time during the period of disability also weighs against her allegations of disability. (Tr. 33) See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

Finally, the ALJ noted Stelmach had applied for and received unemployment benefits in 2007 and 2008, well after her alleged onset date in 2005 (Tr. 34, 133, 272). A claimant who applies for unemployment compensation benefits holds herself out as available, willing, and able to work. Because such an application necessarily indicates an ability to work, it is evidence which negates an applicant's claim that she was disabled. See Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991). See also Black, 143 F.3d at 387.

Based on all of these factors, the Court finds the ALJ conducted a proper credibility analysis, and discounted Stelmach's subjective complaints because they were inconsistent with

the evidence as a whole. As such, the Court will defer to the ALJ's credibility determination. Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir.2011).

## VI. Conclusion

For the foregoing reasons, the ALJ's findings were clearly based on substantial evidence on the record as a whole. The ALJ summarized Stelmach's testimony regarding her limitations, thoroughly discussed the medical evidence in the record, and made specific credibility findings. The ALJ applied the proper standard to the facts and the determination of Stelmach's RFC is supported by the record as a whole. Thus, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 30th day of March, 2015.

John A. Ross

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

23